# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Gray, 2013 IL App (1st) 101064**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCOS GRAY, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-1064 |
| Filed | February 15, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant had a right to proceed *pro se* under the Post-Conviction Hearing Act, and the trial court abused its discretion by refusing to properly consider his request to proceed *pro se* on his postconviction petition, even though the request came eight years into the proceedings on the petition, since the request was not dilatory, it came only after his counsel refused to make or endorse amendments defendant requested, and allowing defendant's request would not disrupt the proceedings, and therefore, the dismissal of the petition was vacated and the cause was remanded for consideration of his request to proceed *pro se* and whether he knowingly and intelligently waived his right to counsel. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 93-CR-20392; the Hon. Colleen McSweeney-Moore, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Rachel Moran, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Epstein and Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant Marcos Gray was convicted in 2000 of first degree murder and attempted armed robbery and sentenced to concurrent prison terms of natural life and 15 years. We affirmed the judgment on direct appeal. *People v. Gray*, No. 1-00-4122 (2002) (unpublished order under Supreme Court Rule 23). Defendant now appeals from the dismissal, upon the State's motion, of his postconviction petition. He contends that the circuit court violated his right to self-representation by not granting his requests to proceed *pro se* and by striking his *pro se* amendments to his petition.

¶ 2    Defendant and codefendants Antwon Tyler and Gregory Jackson were charged with first degree murder and attempted armed robbery in the July 1993 shooting death of Sheila (or Sheilah) Doyle. Jackson was acquitted in a jury trial, and Tyler was tried separately.

¶ 3    The evidence at trial was that defendant assisted Tyler in the attempted armed robbery and shooting of Doyle. Doyle's car was found in the garage of her home with the garage door open, and Doyle was found in the trunk of her car with a single gunshot wound to the back of her head. Tyler's handprints (that is, palmprints and fingerprints) were on the driver's door and trunk lid, while defendant's handprints were on the trunk lid. A neighbor testified that, on the night before Doyle was found, he heard a woman screaming and, when he looked toward the scream, saw a car in front of Doyle's home. He heard a gunshot, the screaming stopped, and two men left the garage and walked quickly to the car. Jackson testified that he had little or no recollection of the events of the day in question. His earlier postarrest statement to an assistant State's Attorney was then admitted as a prior inconsistent statement.

¶ 4    In that statement, Jackson explained that Tyler had earlier shot a hole in the hood of the car owned by Jackson's mother Dorothy and then promised Jackson that he would either pay for it or steal a car to replace the hood. On the day in question, defendant and codefendants met, and Tyler repeated his promise to buy or steal a hood. As they were riding in Jackson's car, Tyler saw a car similar to Dorothy's car and told Jackson to follow it, which he did. When the car parked in a garage, Tyler told Jackson to stop and then ran from the car, refusing to answer Jackson's question of what he intended to do. Tyler and defendant ran into

-2-

the garage while Jackson sat in his car nearby. After a short time, Jackson heard a gunshot, and Tyler and defendant ran back to his car. When they all left in Jackson's car, Jackson asked Tyler what had happened. Tyler replied that "she was fighting me. She tried to take the gun. I had to shoot her."

¶ 5    In corroboration of Jackson's statement, a mechanic testified that he replaced the hood of Dorothy's car and that the old hood had what appeared to be a bullet hole in it.

¶ 6    Following arguments, instructions, and deliberation, the jury found defendant guilty of first degree murder and attempted armed robbery. Following the denial of defendant's posttrial motion, and arguments in aggravation and mitigation, defendant was sentenced to concurrent prison terms of natural life and 15 years. Defendant's postsentencing motion was denied.

¶ 7    On direct appeal, defendant challenged the admission of Jackson's statement on the grounds that it contained a codefendant's hearsay statements. We affirmed, finding in part that any error in the admission of Jackson's statement was harmless beyond a reasonable doubt in light of the unobjectionable portions of Jackson's statement and of the other evidence, including defendant's handprints on the trunk where Doyle's body was found. Defendant also challenged the sufficiency of the evidence, in particular the evidence of accountability. We acknowledged defendant's argument that his handprints established only that he touched Doyle's car but found that the handprints, in light of the other evidence regarding the actions of defendant, Tyler, and Jackson, were sufficient evidence that defendant aided in the commission of the instant offenses. Lastly, defendant contended that the State made an inflammatory remark in closing argument by referring to him as a piranha.

¶ 8    Defendant filed his *pro se* petition in December 2001. He claimed that appellate counsel had been ineffective for disregarding his *pro se* amended brief in the direct appeal, in which he argued that the evidence against him was insufficient because the only evidence against him was the improperly admitted and unduly prejudicial evidence regarding gunshot damage to Dorothy's car, of which defendant insisted he was unaware. He also claimed that trial counsel had been ineffective for not filing any pretrial motions including a motion to quash his warrantless arrest at home. The petition was accompanied by defendant's *pro se* motion for appointment of counsel, and the public defender was appointed.

¶ 9    In June 2002, the State filed a motion to dismiss, contending that the petition raised bare allegations that were not constitutional issues and were barred as *res judicata*.

¶ 10    Defendant filed an amended *pro se* petition in May 2003. In it, he claimed that the trial court erred in denying his *pro se* motion to replace trial counsel for not (1) providing him discovery as he requested, (2) filing a motion to quash his warrantless home arrest, (3) consulting with him in person, though counsel claimed to have done so, (4) challenging jurors with knowledge of the instant case, (5) seeking a mistrial due to extensive media coverage of his case, (6) introducing evidence of his "intoxicant depend[e]ncy" though Jackson described him as being in such a state at the time in question, and (7) seeking jury instructions on second degree murder. Defendant also claimed ineffective assistance of appellate counsel for not raising a claim of ineffective assistance of trial counsel on direct appeal. Defendant claimed that, as he was less than 17 years old at the time of the instant

offenses, he was not subject to the jurisdiction of the criminal court but the juvenile court and thus the instant convictions and sentence are void. He challenged the validity of his warrantless home arrest, the admission of Jackson's statement when he did not admit to making such a statement, and the admission of the mechanic's testimony as unduly prejudicial in the absence of evidence that defendant was aware of the damage to Dorothy's car. Defendant claimed that this court erred in rejecting his *pro se* amended brief on direct appeal. He filed an additional *pro se* amendment in August 2003, expanding upon some of the claims in the May 2003 amendment.

¶ 11    Counsel filed in December 2003 a response to the State's motion to dismiss, claiming inability to examine the record or file a certificate under Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012) due to a recent fire at the offices of the public defender. That said, counsel expressly referred to the *pro se* amendments up to that time and argued that "[a]ll and each of [defendant's] claims are based on substantial constitutional arguments" and are not barred by *res judicata*. Counsel sought time "to further explore [defendant's] claims and to supplement [defendant's] petition if needed so that the court can better determine [the] merit of [defendant's] each claim."

¶ 12    In January and April of 2007, defendant filed *pro se* motions to amend his petition. He argued in the former that his right to due process was violated when the indictment was constructively amended at trial, in that he was charged as a principal but the jury was instructed on accountability. He also claimed that the court erred in responding to a jury inquiry about its instructions by merely ordering the jury to reread the instructions. Defendant argued in the latter amendment that section 109-3.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/109-3.1 (West 2010)), allowing 30 days from the felony arrest of a person still in custody to indictment or preliminary examination, is unconstitutional on its face or was unconstitutional as applied here.

¶ 13    In October 2007, defendant filed a *pro se* motion to supplement his petition with additional authority. In December 2007, defendant filed an amended *pro se* petition, reiterating his constitutional challenge to section 109-3.1. In March 2008, defendant filed a *pro se* motion to amend his petition, adding a right-to-confront challenge to Jackson's statement.

¶ 14    After filing a motion in October 2008 for additional time to file his Rule 651(c) certificate, counsel filed his Rule 651(c) certificate in October 2009. He averred that, after reviewing the record, including "the *pro se* post-conviction petition and other *pro se* filings," and discussing with defendant "the nature of his claims," he was "unable to further supplement or amend the claims raised by [defendant] in his *pro se* filings." Counsel did not file an amended or supplemental petition.

¶ 15    On October 23, 2009, counsel informed the court that defendant wished to proceed *pro se*, with counsel withdrawing, so that the issues in his *pro se* amendments would be considered by the court. Counsel told the court that he had discussed with defendant the status or treatment of *pro se* filings by a represented defendant, and argued that the court had discretion to consider the *pro se* amendments without counsel's withdrawal. The court stated that it "never, ever, permit[s] dual representation, as you are suggesting." Upon the court's

inquiry, counsel explained that defendant had not expressed a desire to proceed *pro se* before two days earlier.

¶ 16        In January 2010, the State filed a motion to strike defendant's *pro se* amendments and filings on the basis that defendant had counsel when he filed those documents. Alternatively, the State requested that the court order defendant to file a single document raising all his claims.

¶ 17        Also in January 2010, defendant filed a *pro se* motion asking the court to consider the claims in his *pro se* amendments. He argued that he was raising these issues himself because counsel refused to raise them in a counsel-filed amended petition. He also raised a new substantive claim: that his natural life sentence was improper because he did not kill Doyle and was unaware of any plan by Tyler to rob Doyle. His prayer for relief was that the court consider the claims "or in the alternative allow [him] to proceed *pro se*."

¶ 18        On January 29, 2010, the State argued in support of its motion to strike. Counsel again informed the court that he would not be amending the petition but believed the court had the discretion to consider the *pro se* amendments. When the court asked counsel if he was "going to proceed on the original petition filed by the defendant," counsel replied, "unless the Court wanted to act on his motion to go *pro se* on this." The court reiterated its disapproval of dual or hybrid representation, with defendant simultaneously acting *pro se* and represented by counsel. Counsel then suggested that defendant should be brought to court to assert his right to proceed *pro se*. The court struck the *pro se* filings, noting counsel's Rule 651(c) certification that he is "ready to proceed on the nine-year-old filing" and characterizing counsel's suggestion as a "dilatory tactic" in light of the fact that the petition had been pending since 2001.

¶ 19        On April 9, 2010, the State argued its motion to dismiss the original petition. Counsel told the court that "we are forced to stand on the petition as it is" and made no argument. The court granted the State's motion, and this appeal timely followed.

¶ 20        On appeal, defendant contends that the court violated his right to represent himself in the postconviction proceedings by not granting his requests to proceed *pro se* and by striking his *pro se* amendments to his petition.

¶ 21        As a threshold matter, we must determine whether defendant, as a postconviction petitioner, has a right to proceed *pro se*. Though the parties argue at length regarding whether there is a constitutional right to self-representation in a postconviction proceeding, we need not address that question because we find that the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2010)) itself establishes a right to proceed *pro se* thereunder. Section 122-4 of the Act provides:

> "If the petitioner is without counsel and alleges that he is without means to procure counsel, he shall state whether or not he wishes counsel to be appointed to represent him. If appointment of counsel is so requested, and the petition is not dismissed pursuant to Section 122-2.1, the court shall appoint counsel if satisfied that the petitioner has no means to procure counsel." 725 ILCS 5/122-4 (West 2010).

¶ 22        The Act is clear that the court must appoint counsel for a defendant who (1) wishes to have counsel appointed and so requests, and (2) lacks the means to procure counsel. In other

words, the Act grants a defendant the initial decision to invoke the right to counsel, rendering the appointment of counsel mandatory if the defendant invokes the right but does not have the means to employ counsel. While the Act does not expressly contemplate a defendant making a request for counsel and later revoking it, as the State correctly notes, it clearly does not contemplate compelling a defendant who does not want counsel to accept counsel nonetheless. The Act creates a statutory right to counsel (*People v. Perkins*, 229 Ill. 2d 34, 42 (2007)) that the statutory language expressly leaves to the defendant-petitioner to invoke at his choosing. We shall not hold that a defendant can choose to proceed *pro se* when he files his postconviction petition but, having chosen at that time to request counsel, is irrevocably bound by that decision throughout the proceedings on his petition. In sum, we find a right to proceed *pro se* under the Act.

¶ 23　　However, the right to self-representation is not absolute; that is, making a request or demand to proceed *pro se* does not *ipso facto* mandate that the defendant must be allowed to represent himself. Where a defendant has a right to proceed *pro se*, he must knowingly and intelligently relinquish his right to counsel. *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011). Waiver of counsel must be clear and unequivocal, not ambiguous, so that a defendant waives his right to self-representation unless he articulately and unmistakably demands to proceed *pro se*. *Id.* at 116. In determining whether a defendant's statement is clear and unequivocal, a court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation. *Id.* We must indulge every reasonable presumption against waiver of the right to counsel. *Id.* The purpose of requiring that a defendant make an unequivocal request to waive counsel is to prevent him from (1) appealing the denial of his right to self-representation or the denial of his right to counsel, and specifically (2) manipulating or abusing the criminal justice system by vacillating between requesting counsel and requesting to proceed *pro se*. *Id.* The determination of whether there has been an intelligent waiver of the right to counsel depends upon the particular facts and circumstances of the case, including the background, experience, and conduct of the defendant. *Id*. We review the trial court's determination for abuse of discretion. *Id.*

¶ 24　　We find that the court here abused its discretion by failing to grant, or even expressly rule upon, defendant's request to proceed *pro se*. While the request was arguably contingent upon the preclusion of defendant's preferred course–consideration of his *pro se* filings while retaining counsel–that does not render the request ambiguous. Instead, defendant made it clear that he wanted to raise his *pro se* claims and would proceed *pro se* if that was the only way to do so. Moreover, the court made it clear before its final ruling on the *pro se* amendments that it would not accept the amendments while allowing defendant to retain counsel. Under such circumstances, it is unambiguous that defendant wanted to proceed *pro se*. Stated another way, defendant here did not vacillate but changed his mind for a readily discernable reason.

¶ 25　　The circuit court found that allowing defendant to represent himself and bringing him to court to do so would further delay a case that had been pending for over eight years without completing the second stage of postconviction proceedings. A request to proceed *pro se* may reasonably be rejected where it "come[s] so late in the proceedings that to grant it would be

disruptive of the orderly schedule of proceedings" or where a defendant "engages in serious and obstructionist misconduct." (Internal quotation marks omitted.) *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 24. Defendant argues that his decision to proceed *pro se* was not dilatory and that he should not be held responsible for the delays by his counsel in reviewing the record and evaluating potential claims. We agree. While defendant's request to proceed *pro se* came late in the postconviction proceedings, it arose only when counsel finally decisively refused to make or endorse the *pro se* amendments and the court made it clear that it would not consider the amendments under such circumstances. In other words, defendant made his request to proceed *pro se* shortly after he had reason to do so, and we see no dilatory intent.

¶ 26    We also do not see how honoring defendant's request would have disrupted the orderly schedule of proceedings. The amendments in question had already been filed, so that defendant's right to self-representation could have been accommodated at this point by, for instance, allowing defendant to file a single document raising all his claims or allowing the State to amend its motion to dismiss to address the amendments on their merits. While this would postpone the disposition of the State's motion to dismiss for the requisite period for amending pleadings and/or pleading a motion, such a routine postponement is not a disruption of the orderly scheduling of proceedings. See *Woodson*, 2011 IL App (4th) 100223, ¶ 24 (request to proceed *pro se* not accompanied by a request for additional time to prepare " 'should generally be viewed as timely as long as it is made before trial' " (quoting *People v. Ward*, 208 Ill. App. 3d 1073, 1084 (1991))).

¶ 27    For the reasons stated above, we conclude that the circuit court abused its discretion when it did not properly consider defendant's request to proceed *pro se*. Therefore, this case must be remanded for further proceedings where that request is given due consideration. Defendant having made a timely and unambiguous request to represent himself, the court shall determine whether he has knowingly and intelligently relinquished his statutory right to counsel and then proceed accordingly.

¶ 28    The judgment of the circuit court is vacated and this cause is remanded for further proceedings consistent with this opinion.

¶ 29    Vacated and remanded with directions.