2020 IL App (2d) 170600-U
No. 2-17-0600
Order filed February 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 99-CF-1830 |
| RAMON DOMINGUEZ, | ) ) ) | Honorable James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Burke and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: During second-stage postconviction proceedings on a successive petition, the trial court abused its discretion when it did not follow up petitioner's legitimately motivated, clear and unequivocal request to proceed *pro se* with an inquiry into whether the request was knowing and intelligent and, instead, relied on petitioner's lack of legal ability and denied the request. We vacate the dismissal of the petition and remand to the second stage for further inquiry into whether petitioner's waiver of counsel was knowing and intelligent, and, if so, for petitioner to present his *pro se* amended petition to the court.

¶ 2   The background in this case involves improper procedure on the part of the trial court under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The court advanced the successive postconviction petition of appellant, Ramon Dominguez, to the second

stage without granting leave to file the successive petition and without making a cause-and-prejudice determination. The court then appointed counsel, who filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and informed the court that he would not be amending Dominguez's original *pro se* successive postconviction petition. Dominguez requested to proceed *pro se*, explaining that he wished to present an amended postconviction petition, which alleged that he had been excluded from the decision to have a jury trial rather than a bench trial for first-degree murder charges. Meanwhile, given the second-stage posture, the State had moved to dismiss, arguing, *inter alia*, that Dominguez's claims lacked merit, were *res judicata*, or were waived, and that Dominguez cannot prove cause and prejudice. The court denied Dominguez's request to proceed *pro se* and, thereafter, granted the State's motion to dismiss Dominguez's original *pro se* petition on the merits of Dominguez's claims and on principles of *res judicata* and waiver, again avoiding a cause-and-prejudice determination.

¶ 3 We determine that, despite the improper procedure, Dominguez was properly given the benefit of the second-stage posture in evaluating Dominguez's request to proceed *pro se*. Dominguez should not be penalized for the court's procedural error in failing to make a cause-and-prejudice determination before advancing the petition and appointing counsel. We note the State will not be prejudiced, because it can *still* argue in its second-stage motion to dismiss that Dominguez cannot prove cause and prejudice. See, *e.g.*, *People v. Bailey*, 2017 IL 121450, ¶ 26.

¶ 4 However, the trial court abused its discretion in outright denying Dominguez's request to proceed *pro se*. As the State concedes, Dominguez was motivated to proceed *pro se* so that he could present his amended claim. This is a proper motivation, and it does not show dilatory intent or obstinance. *People v. Gray*, 2013 IL App (1st) 101064, ¶¶ 24-25. Moreover, Dominguez's initial requests to proceed *pro se* were clear and unequivocal. True, over the course of the

proceedings, Dominguez made a few comments that *arguably* rendered his request unclear. However, these statements did not occur until *after* the court repeatedly put Dominguez in the position to respond to *its* misstatements, and we cannot expect perfect responses from Dominguez under these circumstances. We quote at length the court's inquiry, which occurred over several status hearings, to provide context for Dominguez's statements. These excerpts show that the court postponed ruling on a clear request by Dominguez to proceed *pro se* because it, the court, could not recall what stage of the proceedings the case was in; postponed ruling on a clear request by Dominguez because it, the court, wanted the attorneys to research whether Dominguez even had a right to proceed *pro se* in postconviction proceedings (he did); and applied an incorrect standard—whether Dominguez possessed sufficient legal knowledge and ability—when denying Dominguez's request to proceed *pro se*. Under the unique circumstances of this case, we conclude remand is appropriate.

¶ 5        Because Dominguez made a clear and unequivocal request to proceed *pro se*, the court's inquiry should have been whether Dominguez's request was knowing and intelligent. We remand for the court to make that inquiry and determine whether Dominguez's request was knowing and intelligent, specifically, whether Dominguez understands the nature of the right to counsel he is giving up and the consequences of his decision to proceed *pro se*. Should the court determine that Dominguez's request is knowing and intelligent, Dominguez may pursue his amended petition *pro se* in second-stage proceedings. The State may file a new motion to dismiss or answer. A remand will have the added advantage of restoring a proper structure to the remaining procedural posture of this case.

¶ 6        Finally, we reject the State's argument that a harmless-error analysis can be applied when the court improperly denies a postconviction petitioner the right to proceed *pro se*. For that reason,

we do not address Dominguez's argument on appeal that postconviction counsel was ineffective for failing to amend the petition to include Dominguez's amended claim that he had been excluded from the decision to have a jury trial rather than a bench trial. We vacate the second-stage dismissal and remand for proceedings consistent with this order.

¶ 7                                    I. BACKGROUND

¶ 8     The facts of the underlying murder may be found in this court's disposition of the direct appeal. *People v. Dominguez*, 331 Ill. App. 3d 1006 (2002). In 1999, Dominguez shot his wife in the bedroom, following an argument, in front of their six-year-old daughter. In 2000, the jury convicted Dominguez of two counts of first-degree murder, and the court sentenced Dominguez to 28 years' imprisonment.

¶ 9     Dominguez filed an unsuccessful posttrial motion, direct appeal, and postconviction petition. In 2006, this court affirmed the summary dismissal of the postconviction petition. *People v. Dominguez*, 366 Ill. App. 3d 468, 475 (2006).

¶ 10    Seven years later, on June 24, 2013, Dominguez moved *pro se* for leave to file a successive postconviction petition. The motion was titled "motion for leave," and it specifically requested permission to file a successive postconviction petition.

¶ 11    On July 9, 2013, Dominguez filed the accompanying petition. In it, he raised seven arguments, including that: he was deprived of his right to consult the Mexican consulate, jail workers administered psychotropic medication during the trial, trial counsel failed to offer the jury instruction for involuntary manslaughter, trial counsel mishandled a gun expert's potential testimony, and counsel allegedly untimely filed a federal *habeas corpus* petition.

¶ 12    Between June and July of 2013, the trial court held three status hearings. At each of these status hearings, the court acknowledged that it needed to make a decision on the motion for leave

before it could evaluate the merits of the petition itself. At the last of these hearings, the court stated that it would do so on September 13.

¶ 13 However, at the September 13, 2013, status hearing, unlike the earlier status hearings, the court did not acknowledge that it first needed to determine whether to grant leave to file the successive postconviction petition by making a cause-and-prejudice determination, rather, the court jumped to the merits of the petition itself:

"I have reviewed the postconviction petition and even though arguments can be made one way or another and to the contrary, I find that the defendant raises a justified constitutional issue, granted it [might be] weak, and it may have been addressed somehow in the past. I think in the interest of justice, *I will advance it to the second stage*." (Emphasis added.)

¶ 14 The trial court then appointed counsel to represent Dominguez in the stage-two proceedings. In February 2014, counsel filed a Rule 651(c) certificate. For reasons unclear from the record, counsel was discharged.

¶ 15 In March 2014, the State moved to dismiss the *pro se* petition. It argued, *inter alia*, that Dominguez did not show the cause and prejudice necessary for the court to have granted leave to file the petition and that either *res judicata* or waiver barred the remaining claims.

¶ 16 After multiple continuances, filings, and another public defender appointed and discharged from the case, the court assigned the case to public defender Jason Powell.

¶ 17 On April 3, 2017, Dominguez filed a *pro se* motion for appointment of new counsel, alleging a failure in communication between himself and Powell. Before the motion was heard, however, Dominguez and Powell did eventually communicate.

¶ 18    In those communications, Dominguez told Powell that he wanted to amend the petition to add that he was excluded from the decision to have a jury trial rather than a bench trial. Dominguez also told Powell that he wanted to represent himself in presenting the amended petition.

¶ 19    Powell informed the court of the communications, and a series of status hearings followed. These hearings, occurring in May and June of 2017, form the crux of the instant appeal.

¶ 20    At the May 12, 2017, status hearing, the following exchange took place:

"MR. POWELL: *** I was prepared this morning to ask the court for one more week of status. At that time, I think I would be prepared to file my certificate, either amend or not amend [Dominguez's] petition. In speaking with [Dominguez] this morning, he has indicated to me that he would like to represent himself.

[DOMINGUEZ]: I have been told by the attorney Jason Powell that he does not want to amend my petition. That's why—

THE COURT: I don't think that's what I heard. I heard the attorney saying that he was considering amending your petition."

The court further stated that it would "perhaps" consider Dominguez's request to proceed *pro se* at a later juncture, after counsel reviewed Dominguez's proposed amendments.

¶ 21    At the May 19, 2017, status hearing, counsel informed the court that he filed his Rule 651(c) certificate. Counsel would stand on the original successive petition, and he answered ready to proceed on the State's motion to dismiss. However, the State's attorney was off that day, and the matter was reset for status.

¶ 22    At the May 24, 2017, status hearing, the court first addressed Dominguez's request to proceed *pro se*:

"MR. POWELL: And I did have a conversation with [Dominguez] this morning. And he indicated to me he would like to represent himself. And I believe a couple of weeks ago he made the same request to me and I did mention it to the court and the court did not discharge the public defender's office at that time.

And Judge, based on [Dominguez's] request, I'm asking that he be permitted to represent himself based on his wishes.

THE COURT: [Dominguez], good morning. Is that what you want to do is represent yourself?

[DOMINGUEZ]: Yes.

THE COURT: And will you be able to do your own hearings, et cetera, if I continue to a third stage? Do you know what the third stage is here?

[DOMINGUEZ]: With the help of an interpreter I wish to represent myself.

* * *

THE COURT: Do you know what proceedings we are in?

[DOMINGUEZ]: Yes.

THE COURT: Tell me what are we in?

[DOMINGUEZ]: I'm trying to put my amended petition in the court, but the lawyer, he does not want to present it. And the court asked me that the petition be entered in court.

THE COURT: Could it be that your attorney thinks your petition is not adequate and he wants to file his own petition? Could it be?

[DOMINGUEZ]: No."

¶ 23    Also at the May 24, 2017, status hearing, the trial court asked the attorneys which stage of the proceedings they were in and whether Dominguez even had a right to represent himself:

"THE COURT: I think we're still at the first post-conviction petition. I don't think that has been adjudicated, has it?

MR. POWELL: Yes, Judge.

THE COURT: The first was? It's been pending for a while, Mr. Powell.

MR. POWELL: This is the successive. This is his second—

MR. DILLON: Before your honor is the successive petition.

MR. POWELL: *** After being appointed, in reviewing [Dominguez's] successive post[conviction] petition—

THE COURT: [A] subsequent successive postconviction petition must be filed by leave of court. Have I given leave to do that?

* * *

MR. POWELL: All right. Judge, this is the second postconviction petition. Now, it does not appear that this court gave [Dominguez] leave to file the petition. Why that is and why we made it this far, I can't say for certain. Perhaps, I would speculate, that this court interpreted this—

THE COURT: *** I interpreted that to be the first one. But is it—has the first one been adjudicated?

MR. POWELL: I believe it has, Judge.

THE COURT: Is there an order somewhere? I want you folks to research all of that and tell me, give me a clear picture of what proceedings we're in now. ***

* * *

THE COURT: I'm not discharging you yet until I know and have a clear picture as to where we are. *** Now, the second thing I want you folks to research is whether or not at this supplemental proceeding, whether or not [Dominguez] can appear *pro se*.

* * *

MR. POWELL: Yes. ***Just legally he has an equal right to represent himself.

THE COURT: That might be my opinion too, but I just want you to research it.

MR. POWELL: Certainly.

[DOMINGUEZ]: I put in a motion to get a new lawyer.

THE COURT: You still have an attorney. We are at the stage where the attorney is still here.

[DOMINGUEZ] (without interpreter): I don't want him to represent me, your Honor.

THE COURT: That might happen, I don't know. Then we'll see how much of a lawyer you are.

[DOMINGUEZ] (without interpreter): Okay. I would like to deny or waive my right to have an attorney. And I would like to represent myself with the help of him (indicating).

THE COURT: Yeah, but you didn't tell me what stage we're in yet. I need to have some clear picture here. The court needs some assistance, all right? I'm sorry, you are not helping me."

¶ 24    At the June 6, 2017, status hearing, the trial court went back and forth as to whether to allow Dominguez proceed *pro se*. The court again expressed confusion as to the procedural history

of the case and told Dominguez "over and over" that Dominguez did not have the legal knowledge to proceed *pro se*:

"THE COURT: All right, and where are we folks?

MR. POWELL: Same place we were last time this was up, Judge.

I have had discussions with [Dominguez], and I informed him that I would not be amending his petition. I did file my certificate, and I would be ready to proceed on the State's motion to dismiss.

In my discussions with [Dominguez], he indicated that he would like to represent himself, so I did bring that to the court's attention the last two court dates. I believe at that time, the court was reluctant to allow [Dominguez] to represent himself.

I believe that is still his wish.

THE COURT: Because it appeared that your client lacked a fundamental legal knowledge to represent himself. There's a difference between being fit to stand trial and being fit to represent oneself; and since he knew basically nothing about the proceedings, not even knowing what stage we are in, I determined at the time that he lacks the most fundamental legal knowledge for one to represent themselves.

I did not proceed any further. I asked you to perhaps have a conversation with your client; but again, you are not here to educate your client. You are here to advise your client. Does your client still wish to proceed himself?

MR. POWELL: Yes, Judge.

THE COURT: And represent himself?

MR. POWELL: Yes.

THE COURT: Is that correct, [Dominguez]?

- 10 -

THE INTERPRETER: Yes.

THE COURT: All right, then what would we do next?

THE INTERPRETER: I want to amend my petition, and that's what I want to present right now.

THE COURT: All right, then you may file your amended petition; and when I see that, I will discharge the public defender at this time.

MR. POWELL: Thank you, Judge.

Judge, just for the record there appears to be two different amendments that I believe [Dominguez] is asking to file.

THE COURT: But isn't this a subsequent postconviction petition?

MR. POWELL: It is.

THE COURT: Was [Dominguez] given leave to file a subsequent?

MR. POWELL: He was not, Judge. I think the issue, however, is that—

THE COURT: Absent the request and absent—I will deny the amendment.

MR. DILLON: Either the public defender is discharged or he's not.

THE COURT: No.

MR. DILLON: If [Dominguez] is able to proceed *pro se*, [Dominguez] can argue on his own behalf.

THE COURT: But that's exactly what I determined at the last time, and we are back in this square one.

No, I will deny [Dominguez's] request to represent himself, because he lacks the fundamental knowledge of the proceedings. I thought that perhaps he understood things a little better but, no, he doesn't.

MR. POWELL: *** Regarding the obstacles of that successive postconviction petition, I think in this particular case—

THE COURT: Absent filing of the request to file a subsequent—

MR. POWELL: —there *was* a request actually filed.

THE COURT: There was?

MR. POWELL: Leave was sought in the original [successive] petition filed by [Dominguez].  Once it was filed, this court did not act on that, and 90 days passed.[1]

THE COURT: There was?  Let me see it.  No one informed me as to that.

\* \* \*

[Dominguez attempts to explain the proceedings.]

\* \* \*

THE COURT: Obviously, you know, we have a little problem with you speaking Spanish, sir, and requiring a translator and filing the documents in English.

THE INTERPRETER: I do.  I do want you to give me an opportunity to represent myself.

THE COURT: But again, you lack the fundamental knowledge, I don't know how the translation would come out, the fundamental knowledge to know what to do in court in plain words.

---

[1] This statement is incorrect.  Dominguez sought leave on June 24, 2013.  Less than 90 days later, on September 13, 2013, the trial court advanced the petition.

THE INTERPRETER: I do understand that we are in the procedures right now for postconviction petition, and I have—amending my petition. I have the petition already done—made. It's notarized and everything.

THE COURT: Did I advance it [to] the second stage obviously?

MR. POWELL: I think by default, Judge.

THE COURT: By default, yes. Not acting upon the—I'm looking to see if there was leave sought for a subsequent postconviction petition.

Can I ask why, just so perhaps the record is complete, why do you want to represent yourself? Because your attorney tells you, no, you can't do that?

THE INTERPRETER: No, because the lawyer doesn't want to amend my petition, so then I do want them to give me the opportunity to amend my own petition.

* * *

THE COURT: Let's see, [Dominguez], you understand that I don't know what your basic education is. It seems like it's very basic and whoever you are speaking to in jail or in prison, and they give you advice, I think Mr. Powell possesses far superior knowledge than them; and perhaps if your attorney, Mr. Powell, tells you you can't do something, you should take his advice.

* * *

THE COURT: *** Another reason is the proceedings are in English. The documents are filed in English. I understand that you don't possess knowledge of the English language, and I am not faulting you for that. However, in writing a document in Spanish and having it translated, and it would—I don't know how that would turn out ***.

*** I don't believe—neither have you demonstrated that you possess the legal knowledge to enter this proceeding by representing yourself. *I am trying to say that over and over.*

THE INTERPRETER: I know enough to represent myself, so I would like you to give me the opportunity to do it.

* * *

THE COURT: *** [I]t appears, sir, that you don't really have a grasp of what's going on here and what the procedures are. You don't even know what a common law record is. I am sorry.

THE INTERPRETER: So then give me another lawyer.

THE COURT: Why?

THE INTERPRETER: This one is lying to me." (Emphasis added.)

The court asked why counsel lied. Dominguez answered: "He tells me that we're going to hear *** the petition that I have given to him. That is a lie." Counsel then clarified that he never told Dominguez that his amended successive postconviction petition would be heard. Instead, counsel would be standing on the original successive postconviction petition. In his view, the amendments "do not contain any issue that is proper to put forth in this successive postconviction petition."

¶ 25    The court then continued:

"THE COURT: As much as I want [Dominguez] to represent himself and everyone has a right to do that and accept the consequences, yet as I said, with impediment of the language and lacking fundamental legal knowledge to proceed, I'm not inclined to do so.

* * *

THE INTERPRETER: [But counsel] hasn't filed any motions, any petitions on my favor. He's not doing anything.

THE COURT: Well, you know what, [Dominguez]? It seems like you have several lawyers. You came so far. A jury convicted you because of your—if I recall exactly, a contributing factor was your obstinance to have your original lawyer offer an instruction of a lesser-included offense. It was your obstinance, and your obstinance here today persists I see. ***.

* * *

MR. POWELL: *** I won't be filing his first or second petition to his successive petition. I can understand *** how that must feel that his argument, his fight, is not being proposed, so I can understand his frustration.

That being said, Judge, assuming the public defender remains on the case, I filed my certificate ***.

THE COURT: I will and maybe perhaps we will have a different opinion, and they may be of the opinion that anyone can represent themselves; and if they have a fool for a client, it shall be allowed; but I think there is a question of fitness to represent someone, self; and obviously, it's evident here, and it's obvious here.

MR. POWELL: Does the public defender remain?

THE COURT: Yes, sir.

MR. POWELL: As a result, Judge—

THE COURT: I was trying initially to perhaps leaning towards allowing [Dominguez] to represent himself, but it seems like his argument is that you should have filed [amendments to the petition], and perhaps that was his wish. Why didn't you file those ***? Did you file an amended postconviction petition?

MR. POWELL: I did not. *** As I have stated, that is my position given the nature of this case.

THE COURT: All right, I am going to set the matter then for hearing on the State's motion to dismiss [Dominguez's] petition. As I said, someone else might disagree with me."

¶ 26 On June 30, 2017, the trial court granted the State's motion to dismiss. The court acknowledged that it might not have followed proper procedure for successive postconviction petitions: "If I have given leave, I don't recall." Nevertheless, it gave Dominguez the benefit of the doubt on this point and treated his petition as having advanced to the second stage: "[Whether I gave leave] at this point *** [does not have] much bearing because we are here, and it's the State's motion to dismiss that we are considering." The court then noted that Dominguez raised no new constitutional issues and dismissed the petition. It did not address the State's cause-and-prejudice argument. This appeal followed.

¶ 27                                II. ANALYSIS

¶ 28 On appeal, Dominguez argues that: (1) he received unreasonable assistance of postconviction counsel, where postconviction counsel failed to amend the petition to include his new claim that he was excluded from the decision to have a jury trial rather than a bench trial; and (2) the trial court abused its discretion in denying his clear and unequivocal request to represent himself.

¶ 29 We agree with Dominguez's second argument—the trial court abused its discretion in failing to follow Dominguez's properly motivated, clear request to proceed *pro se* with an inquiry into whether the request was also knowing and intelligent. This failure is not subject to harmless-error review. Therefore, we need not address the merits of Dominguez's first argument, which

hinges on the merits of what would have been his amended claim. The point before us is not the merits of the claim, but Dominguez's right to present it, *pro se*, to the court.

¶ 30    As to the second issue, we begin our analysis by reviewing proper postconviction procedure and the procedural posture of the instant case. We then discuss a postconviction petitioner's right to counsel and corresponding right to proceed *pro se*, provided the request to proceed *pro se* is made: (1) clearly and unequivocally; (2) knowingly and intelligently; and (3) without dilatory or obstructive intent. Next, we examine *Gray*, which illustrates these points. Finally, we apply these principles to the instant case, and we determine that, in context, Dominguez's request was both properly motivated and clear and unequivocal. Therefore, as in *Gray*, the trial court should have next inquired as to whether Dominguez's request was also knowing and intelligent before denying it. We follow the remedy in *Gray* and remand for the court to so consider.

¶ 31                              A. Postconviction Procedure

¶ 32    The proper procedure in cases involving successive postconviction petitions is as follows. The Act contemplates the filing of only one postconviction petition, and it provides that any claim of substantial denial of a constitutional right not raised in the original or amended petition is waived. 725 ILCS 5/122-3 (West 2016). The Act sets forth one exception to the rule, allowing a defendant to file a successive postconviction petition if the defendant obtains leave of the court by demonstrating cause and prejudice. 725 ILCS 5/122-1(f) (West 2016). Section 122-1(f) sets forth the cause-and-prejudice test:

> "Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results

from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 33 The court makes the cause-and-prejudice determination based on the pleadings, without input from the State, prior to the first stage of traditional postconviction proceedings. *Bailey*, 2017 IL 121450, ¶¶ 23-25. Satisfying the cause-and-prejudice test does not entitle the defendant to relief but, rather, gives him an avenue for filing the successive petition. *Id.* ¶ 25. If the court determines that the defendant has adequately alleged cause and prejudice, the court will grant the defendant leave to file the petition. *Id.* ¶ 26. After the court grants the defendant leave to file the petition, it advances to the traditional three-stage process for evaluating postconviction petitions. *Id.*

¶ 34 At the first stage, within 90 days of its filing, the court must review the *pro se* petition to determine whether it states the gist of a constitutional violation or is either frivolous or patently without merit. *Id.* ¶ 18. At the second stage, the court may appoint counsel to represent the defendant and to file any amendments to the petition deemed necessary, and the State may move to dismiss. *Id. Grounds for dismissal may include, in the case of a successive petition, the defendant's failure to show cause and prejudice. Id.* ¶ 26. The court will determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Id.* ¶ 18. At the third stage, the court conducts an evidentiary hearing before deciding whether to grant relief. *Id.*

¶ 35 Here, the trial court did not follow proper procedure. The court advanced the successive postconviction petition to the second stage without granting leave and making a cause-and-

prejudice determination. The court appointed counsel, who filed a certificate pursuant to Rule 651(c) and informed the court that he would not be amending Dominguez's original *pro se* successive postconviction petition. Dominguez requested to proceed *pro se*, explaining that he wished to present an amended postconviction petition, which included the additional allegation that he had been excluded from the decision to have a jury trial rather than a bench trial. Meanwhile, the State moved to dismiss, arguing, *inter alia*, that Dominguez's claims lacked merit, were *res judicata*, or were waived, and that Dominguez cannot prove cause and prejudice.

¶ 36    Given the significant procedural irregularities here that brought the case to the second stage, the trial court was correct that it is at this posture that the court should rule on Dominguez's request to proceed *pro se*. We note the State agrees that the trial court advanced the *pro se* successive postconviction petition to the second stage. Thus, the question before us is whether the trial court violated Dominguez's right to represent himself in the second stage of postconviction proceedings.

¶ 37                    B. Right to Self-Representation in Postconviction Proceedings

¶ 38    A defendant has a *statutory* right to counsel in postconviction proceedings, provided that the petition has survived the first stage, and he or she has a corresponding right to self-representation. *Gray*, 2013 IL App (1st) 101064, ¶ 21; 725 ILCS 5/122-4 (West 2016). Postconviction courts have borrowed the requirements necessary to assert the right to self-representation from sixth-amendment *constitutional* case law. *Id*. ¶ 23. The State does not dispute that the following requirements are necessary to assert the right to self-representation in the postconviction context.

¶ 39    Waiver of counsel must be clear and unequivocal, not ambiguous. *Id*. A defendant waives his right to counsel only if he articulately and unmistakably demands to proceed *pro se*. *Id*. In

determining whether a defendant's request is clear and unequivocal, the court must consider whether the defendant truly desires to represent himself. *Id.* Courts may look to the defendant's conduct following the request for self-representation. *Owens*, 2018 IL App (3d) 150616, ¶ 13. A request is not clear and unequivocal if the defendant later acquiesces to his counsel's representation, abandons his earlier request to proceed *pro se*, or vacillates in his position. *Id.* The purpose of requiring that a defendant make a clear and unequivocal request is to prevent him from manipulating the criminal justice system by appealing the denial of his right to self-representation or the denial of his right to counsel where he has vacillated between the two positions. *Gray*, 2013 IL App (1st) 101064, ¶ 23.

¶ 40 In addition to being clear and unequivocal, a defendant must also knowingly and intelligently relinquish his right to counsel. *Id.* In determining whether a defendant's request was made knowingly and intelligently, the court should look to the particular facts and circumstances of the case, including the background, experience, and conduct of the accused. *People v. Baez*, 241 Ill. 2d 44, 116 (2011). A defendant need not possess the skill and experience of a lawyer in order to knowingly and intelligently choose self-representation. *Id.* A court may consider a defendant's decision to represent himself unwise, but if the defendant's decision is made knowingly and intelligently, the court must accept it. *Id.* However, a court should admonish the defendant of "the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (quoting *People v. Lego*, 168 Ill. 2d 561, 564 (1995)). The defendant must be informed of the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

¶ 41 Ideally, the court should inform the defendant of the following: "(1) presenting a defense is not a simple matter of telling one's story, but requires adherence to various technical rules

governing the conduct of a trial; (2) a lawyer has substantial experience and training in trial procedure and the prosecution will be represented by an experienced attorney; (3) a person unfamiliar with legal procedures (a) may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, (b) may not make effective usage of such rights as the *voir dire* of jurors, and (c) may make tactical decisions that produce unintended consequences; (4) the defendant proceeding *pro se* will not be allowed to complain on appeal about the competency of his representation; (5) the effectiveness of his defense may well be diminished by his dual role as attorney and accused; (6) defendant will receive no special consideration from the court; (7) defendant will receive no extra time for preparation or greater library time (if in prison); (8) a lawyer can render important assistance (a) by determining the existence of possible defenses to the charges against defendant, (b) through consultations with the prosecutor regarding possible reduced charges or lesser penalties, and (c) in the event of a conviction, by presenting to the court matters which might lead to a lesser sentence; (9) in the event the court accepts defendant's decision to represent himself, defendant will not be given an opportunity to change his mind during trial; and (10) if the court in its discretion is not going to appoint standby counsel, to specifically inform the defendant that there will be no standby counsel to assist him at any stage during trial." *People v. Ward*, 208 Ill. App. 3d 1073, 1081-82 (1991) (citing W. LaFave and J. Israel, 2 Criminal Procedure §§ 11.5(a), (b), (c), at 42-45 (1984)).

¶ 42   We emphasize, however, that a court's inquiry into the defendant's ability to make a knowing and intelligent waiver of the right to counsel is *not* an inquiry into the defendant's *ability* to adequately represent himself.  *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 24.  A court's reliance on a defendant's inability to adequately represent himself as a basis to deny a request to proceed *pro se* may constitute reversible error.  *Id.*

¶ 43    Even where a defendant meets the "clear and unequivocal" and "knowing and intelligent" requirements, the court may nevertheless reject the request if it comes so late in the proceedings that to grant it would be disruptive of the orderly schedule of proceedings.  *Gray*, 2013 IL App (1st) 101064, ¶ 25.  The court may also reject the request if a defendant engages in serious obstructionist conduct or acts with dilatory intent.  *Id*.

¶ 44                                C. *Gray*

¶ 45    *Gray* illustrates these principles of self-representation in postconviction proceedings.  In *Gray*, the defendant was convicted of first-degree murder and attempted armed robbery.  The convictions were upheld on direct appeal.  In 2001, the defendant filed a *pro se* postconviction petition.  The petition survived the first stage, the court appointed a public defender, and the State moved to dismiss.  In 2003, counsel responded to the motion to dismiss, asking for more time to examine the record.  Over the next several years, the defendant continued to file *pro se* amendments to the petition, despite the fact that he was represented by counsel.  In 2009, counsel filed his Rule 651(c) certificate, wherein he stated he would stand on the 2001 *pro se* petition and would not incorporate the defendant's *pro se* amended claims.

¶ 46    Soon after, counsel informed the court that the defendant wished to proceed *pro se*, with counsel withdrawing, so that the defendant could put his *pro se* amended claims before the court for consideration.  The defendant had not expressed a desire to proceed *pro se* until two days earlier, when he learned that his amended claims would not be presented for consideration. Counsel also suggested that the court had discretion to consider the *pro se* amendments without counsel's withdrawal, a proposed dual representation that the court soundly rejected.  Counsel then asked that the defendant be brought to court to assert his right to proceed *pro se*.  The court struck the *pro se* filings, declined to bring the defendant to court, and characterized counsel's suggestion

as a dilatory tactic, noting counsel's Rule 651(c) certification that he was ready to proceed on the 2001 petition. The State prevailed on its motion to dismiss the 2001 petition.

¶ 47    On appeal, the defendant argued that the trial court violated his right to represent himself in the postconviction proceedings. The appellate court agreed, determining that the request was clear and unequivocal and made without dilatory or obstructionist intent. *Id*. ¶¶ 24-25. As to the defendant's clear and unequivocal request, the court stated:

> "While the request was arguably contingent upon the preclusion of defendant's preferred course—consideration of his *pro se* filings while retaining counsel—that does not render the request ambiguous. Instead, defendant made it clear that he wanted to raise his *pro se* claims and would proceed *pro se* if that was the only way to do so. Moreover, the court made it clear before its final ruling on the *pro se* amendments that it would not accept the amendments while allowing defendant to retain counsel. Under such circumstances, it is unambiguous that defendant wanted to proceed *pro se*. Stated another way, defendant here did not vacillate but changed his mind for a readily discernable reason." *Id*. ¶ 24.

As to the lack of dilatory or obstructionist intent, the court stated:

> "While defendant's request to proceed *pro se* came late in the postconviction proceedings, it arose only when counsel finally and decisively refused to make or endorse the *pro se* amendments and the court made it clear it would not consider the amendments under any circumstances. In other words, defendant made his request to proceed *pro se* shortly after he had reason to do so, and we see no dilatory intent." *Id*. ¶ 25.

¶ 48    The appellate court remanded for the trial court to properly consider the defendant's right to proceed *pro se*. *Id*. ¶ 27. Given that the defendant made a clear and unequivocal request and there was no dilatory or obstructionist intent, all that was left for the trial court to determine on

remand was whether the defendant has knowingly and intelligently waived his right to counsel. *Id.*

¶ 49                                  D. The Instant Case

¶ 50    Like the defendant in *Gray*, Dominguez made a clear and unequivocal request to proceed *pro se*. It was made without obstructive or dilatory intent. Therefore, as in *Gray*, we remand for the trial court to determine whether Dominguez knowingly and intelligently waives his right to counsel.

¶ 51                              1. Clear and Unequivocal Request

¶ 52    Dominguez made a clear and unequivocal request to proceed *pro se* over the course of several status hearings. At the May 12, 2017, hearing, attorney Powell informed the court that Dominguez wanted to proceed *pro se*. Dominguez also told the court that he wanted to proceed *pro se*, so that he could present his amended claims. The court postponed further inquiry and a ruling on the matter, because Powell had not yet determined if he would amend the petition to include Dominguez's new claim. We do not fault the court for this initial postponement, particularly given Dominguez's reason for wanting to proceed *pro se*. Nevertheless, at the May 12, 2017, hearing, Dominguez made clear his position that, if Powell would not include his new claim, he wanted to proceed *pro se* so that he could present it to the court himself.

¶ 53    At the May 19, 2017, hearing, Powell let the court know that he would not be including the new claim. However, because the State was not ready to proceed, little else was resolved on that date.

¶ 54    At the May 24, 2017, hearing, Powell and Dominguez again made clear Dominguez's request to proceed *pro se*. In fact, Powell opened with that request:

"MR. POWELL: And I did have a conversation with [Dominguez] this morning. And he indicated to me he would like to represent himself. And I believe a couple of weeks ago he made the same request to me and I did mention it to the court and the court did not discharge the public defender's office at that time.

And Judge, based on [Dominguez's] request, I'm asking that he be permitted to represent himself based on his wishes.

THE COURT: [Dominguez], good morning. Is that what you want to do is represent yourself?

[DOMINGUEZ]: Yes.

THE COURT: And will you be able to do your own hearings, et cetera, if I continue to a third stage? Do you know what the third stage is here?

[DOMINGUEZ]: With the help of an interpreter I wish to represent myself."

Dominguez's request was clear, and the court subsequently followed it with improper inquiries into Dominguez's legal knowledge rather than Dominguez's understanding of the right he intended to waive. In any case, the court's inquiry did *not* show Dominguez to be woefully lost in the proceedings:

"THE COURT: Do you know what proceedings we are in?

[DOMINGUEZ]: Yes.

THE COURT: Tell me what are we in?

[DOMINGUEZ]: I'm trying to put my amended petition in the court, but the lawyer, he does not want to present it. ***."

- 25 -

The hearing then devolved as the court revealed its uncertainty as to what stage of the proceedings the case was in and whether Dominguez even had a right to proceed *pro se*. Hence, the court delayed ruling on Dominguez's request to proceed *pro se*.

¶ 55 Finally, at the June 6, 2017, hearing, Powell again opened with Dominguez's request to proceed *pro se*. Dominguez again made a clear request, which the court initially granted:

"THE COURT: All right, and where are we folks?

MR. POWELL: Same place we were last time this was up, Judge.

I have had discussions with [Dominguez], and I informed him that I would not be amending his petition. I did file my certificate, and I would be ready to proceed on the State's motion to dismiss.

In my discussions with [Dominguez], he indicated that he would like to represent himself, so I did bring that to the court's attention the last two court dates. I believe at that time, the court was reluctant to allow [Dominguez] to represent himself.

I believe that is still his wish.

THE COURT: Because it appeared that your client lacked a fundamental legal knowledge to represent himself. There's a difference between being fit to stand trial and being fit to represent oneself; and since he knew basically nothing about the proceedings, not even knowing what stage we are in, I determined at the time that he lacks the most fundamental legal knowledge for one to represent themselves.

I did not proceed any further. I asked you to perhaps have a conversation with your client; but again, you are not here to educate your client. You are here to advise your client. Does your client still wish to proceed himself?

MR. POWELL: Yes, Judge.

THE COURT: And represent himself?

MR. POWELL: Yes.

THE COURT: Is that correct, [Dominguez]?

THE INTERPRETER: Yes.

THE COURT: All right, then what would we do next?

THE INTERPRETER: I want to amend my petition, and that's what I want to present right now.

THE COURT: All right, then you may file your amended petition; and when I see that, *I will discharge the public defender at this time*.

MR. POWELL: Thank you, Judge.

Judge, just for the record there appears to be two different amendments that I believe [Dominguez] is asking to file."  (Emphasis added.)

¶ 56    Without question, at this point in the hearing, Dominguez made a clear request to proceed *pro se* so that he could present his amended claim.  The court appeared to grant the request: "I will discharge the public defender at this time."   Then, without any prompting from Powell or Dominguez, the court reversed course and again inquired as to the stage of the proceedings.  Also, without any intervening comment from Dominguez, the trial court again stated that Dominguez could not proceed *pro se*, because he lacked legal ability:

"MR. POWELL: Thank you, Judge.

Judge, just for the record there appears to be two different amendments that I believe [Dominguez] is asking to file.

THE COURT: But isn't this a subsequent postconviction petition?

MR. POWELL: It is.

THE COURT: Was [Dominguez] given leave to file a subsequent?

MR. POWELL: He was not, Judge. I think the issue, however, is that—

THE COURT: Absent the request and absent—I will deny the amendment.

MR. DILLON: Either the public defender is discharged or he's not.

THE COURT: No.

MR. DILLON: If [Dominguez] is able to proceed *pro se*, [Dominguez] can argue on his own behalf.

THE COURT: But that's exactly what I determined at the last time, and we are back in this square one.

No, I will deny [Dominguez's] request to represent himself, because he lacks the fundamental knowledge of the proceedings. I thought that perhaps he understood things a little better but, no, he doesn't."

¶ 57    Each of these excerpts show that Dominguez made numerous clear and unequivocal requests to go *pro se* at the *beginning* of the relevant status hearing. We reject the State's argument that Dominguez's requests were not clear, because he vacillated between a desire to proceed *pro se* and a desire to be represented by counsel. As we learned from *Gray*, when a petitioner changes his mind for a readily discernible reason, such as the court ruling out his preferred avenue of representation, the change does not necessarily constitute vacillation. *Gray*, 2013 IL App (1st) 101064, ¶ 24. As in *Gray*, Dominguez's requests for counsel were made only *after* the court (wrongly) rejected his clear request to proceed *pro se*.

¶ 58    Moreover, the "request" for counsel to which the State points was not so much a request as it was a frustrated retort following the court's refusal to grant Dominguez's preferred avenue of representation. That is, on June 6, 2017, the court cited Dominguez's lack of legal ability as a

basis to deny his request to proceed *pro se*, and Dominguez snapped, "So then give me another lawyer." Another "request" for counsel to which the State points is taken out of context. The State believes the following exchange shows that Dominguez asked for Powell to serve as his standby counsel when he "indicated" to a person not specified in the record:

> "[DOMINGUEZ] (without interpreter): I don't want him to represent me, your Honor.
>
> THE COURT: That might happen, I don't know. Then we'll see how much of a lawyer you are.
>
> [DOMINGUEZ] (without interpreter): Okay. I would like to deny or waive my right to have an attorney. *And I would like to represent myself with the help of him (indicating).*"

Contrary to the State's position, the record does not show that defendant requested standby counsel. Rather, the record shows that defendant sought the help of an interpreter. Defendant stated that he wanted "the help of him (indicating)." Defendant spoke for himself, without an interpreter when he made this request. Earlier in the hearing, defendant had more specifically stated: "With the help of an interpreter I wish to represent myself." Given this context, we believe that the State is stretching to assume that defendant pointed, or "indicated," to Powell, as opposed to the interpreter, when stating that he wanted help. This is particularly true when the court responded to defendant's request by telling defendant that it, the court, "need[ed] some assistance" to understand what was going on. If defendant had indicated to Powell, the court would not have responded in that manner. Powell would have been able to assist the court in understanding the procedural history of the case. This is not an instance where the court's ultimate ruling can provide

a clue as to how to interpret defendant's non-verbal "indication," because, as of the May 24 hearing, the court had taken the matter under advisement pending further research.

¶ 59                      2. No Dilatory or Obstructive Intent

¶ 60     Dominguez's request to proceed *pro se* was not made with dilatory or obstructive intent. The State agrees that it "is clear from the record" that Dominguez's motivation for proceeding *pro se* was so that he could present his *pro se* amendments to the court during the second-stage proceedings. Wishing to present one's *pro se* amendments when appointed counsel declines to endorse them is a proper, non-dilatory reason to request to proceed *pro se*. *Gray,* 2013 IL App (1st) 101064, ¶¶ 24-25.

¶ 61     The court's June 6, 2017, reference to Dominguez's "obstinance" does not change our view. The court was referring to Dominguez's behavior at the trial, which occurred more than 15 years prior and to Dominguez's expressions of disappointment upon being told he could not proceed *pro se*. The court was not referring to Dominguez's motivation to proceed *pro se* in the first place.

¶ 62           3. Remand to Ensure Dominguez's Knowing and Intelligent Waiver

¶ 63     Given that Dominguez made a clear and unequivocal request to proceed *pro se* without dilatory or obstructive intent, the court should have determined whether Dominguez's waiver of counsel was knowing and intelligent. The court should have informed Dominguez of the nature of the right being abandoned and the consequences of the decision to abandon it. See *Lego*, 168 Ill. 2d at 564; *Ward*, 208 Ill. App. 3d at 1081-82. We remand for such an inquiry.

¶ 64     We reject the State's position that the court already made said determination by "conclud[ing] that [Dominguez] did not have a full awareness of the consequences of his decision

to proceed without counsel." The State's assertion is conclusory; it points to no supporting statements in the transcript.

¶ 65    Rather than ensure that Domiguez's waiver was knowing and intelligent, the court inquired into Dominguez's legal ability. These were not isolated references. The record demonstrates the court's repeated reliance on its perception of Dominguez's lack of legal ability: (1) "I will deny [Dominguez's] request to represent himself, *because* he lacks the fundamental knowledge of the proceedings" (emphasis added); (2) "Another *reason* is the proceedings are in English. The documents are filed in English. I understand that you don't possess knowledge of the English language, and I am not faulting you for that. However, in writing a document in Spanish and having it translated, and it would—I don't know how that would turn out ***. I don't believe— neither have you demonstrated that you possess the legal knowledge to enter this proceeding by representing yourself. *I am trying to say that over and over*" (emphases added); and, following Dominguez's direct plea to represent himself, (3) "But again, you lack the fundamental knowledge, I don't know how the translation would come out, the fundamental knowledge to know what to do in court in plain words."

¶ 66    Again, the court's improper reliance on Dominguez's inability to adequately represent himself may constitute reversible error. *Woodson*, 2011 IL App (4th) 100223, ¶ 24. Here, we follow *Gray* and remand for a proper inquiry. Should the court determine that Dominguez's request is knowing and intelligent, Dominguez may pursue his amended petition *pro se* in second-stage proceedings. The State may pursue its motion to dismiss.

¶ 67                            D. Harmless Error Does Not Apply

¶ 68    Finally, we reject the State's argument that remand is not necessary, because the harmless-error rule applies. The State spends several pages in its appellate brief establishing that the right

to counsel and the corresponding right to proceed *pro se* in postconviction proceedings is created by statute, not the constitution. We agree. The State then makes the leap, without any citation to relevant authority, that, because these rights are created by statute, harmless error applies.

¶ 69    We disagree. The supreme court has determined that failings associated with the statutory right to counsel, such as postconviction counsel's failure to file a Rule 651(c) certificate, are not subject to a harmless-error analysis. *People v. Suarez*, 224 Ill. 2d 37, 51 (2007). We agree with Dominguez that, "if the right to postconviction counsel is independent from the merits of the petition, so too should be the right to proceed *pro se*."

¶ 70    The State also argues that *Gray* "did not preclude a harmless error analysis," because, in *Gray*, the court "merely held that the circuit court did not properly consider the petitioner's request to proceed *pro se* and that remand was necessary for the court to determine whether the waiver of counsel was knowing and [intelligent]." However, that *is* what we hold here.

¶ 71    Here, again, the court postponed ruling on a clear request to proceed *pro se*, because it was uncertain as to the stage of the proceedings and petitioner rights. Upon receiving Dominguez's clear request, the court should have determined whether the request was knowing and intelligent and, if so, allowed him to proceed *pro se*. As in *Gray*, we remand for that determination.

¶ 72                                III. CONCLUSION

¶ 73    For the reasons stated, we vacate the trial court's second-stage dismissal and remand for further second-stage proceedings consistent with this order.

¶ 74    Vacated and remanded.