2022 IL App (1st) 162699-U

No. 1-16-2699

Order filed June 30, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 93 CR 21971 |
| | ) | |
| MARCOS GRAY, | ) | The Honorable |
| | ) | Maura Slattery-Boyle, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

ORDER

¶ 1    *Held*:   This court affirms the judgment of the circuit court denying defendant leave to file his successive petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) because he failed to establish cause and prejudice.

¶ 2    Following a jury trial, defendant Marcos Gray was found guilty of committing first degree murder and armed robbery in 1993 at age 16. He was then sentenced to a total of 55 years in prison. Defendant appeals from the denial of leave to file his *pro se* successive petition under

the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), contending his sentence constitutes a *de facto* life sentence in violation of the eighth amendment's ban on cruel and unusual punishments (U.S. Const., amend. VIII) and Illinois' proportionate penalties provision (Ill. Const. 1970, art. I, § 11). We affirm.

¶ 3                                      BACKGROUND

¶ 4      The evidence at trial established that in March 1993, defendant drove up next to a car full of mostly women and children, jumped out while armed, and shot the driver dead, stating, "There, m____ f_____." Defendant also committed an armed robbery of a man situated right behind the vehicle. Other crimes evidence introduced at trial showed that about 15 minutes beforehand and just blocks away, defendant had robbed another man at gunpoint. Defendant admitted to the crimes, although claimed the shooting was accidental.

¶ 5      An extensive sentencing hearing followed, which we summarize as follows. In aggravation, the State presented a victim impact statement from the deceased's mother. The State also presented evidence showing that just months after the above-stated incidents, in May 1993, defendant shot a man in the shoulder and hand. In July 1993, defendant admittedly participated in murdering a woman who was later found in her car trunk with a gunshot wound to her head, a crime for which defendant was indicted.[1] In August 1993, he also pushed a 7-year-old child off his bike in the presence of the child's grandfather, then threatened to kill the family. In mitigation, defendant's mother testified that his father physically abused her, had drinking problems, and would also hit defendant, although in his presentence investigation report (PSI),

---

[1]Following a jury trial for that offense, defendant was convicted in 2000 of first degree murder and attempted armed robbery, then sentenced to a mandatory term of life imprisonment, to be served concurrently with a 15-year term. See *People v. Gray*, 2013 IL App (1st) 101064, ¶¶ 1, 3. Later, and pursuant to a supervisory order from our supreme court, this court remanded the cause for a new sentencing hearing in light of *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. See *People v. Gray*, 2015 IL App (1st) 112572-B, ¶ 9.

defendant denied any abuse. Defendant was frequently hospitalized for his asthma and missed school. His mother later divorced the father and worked two jobs, so she was unable to supervise her household, which included 10 children. Around age 16, defendant had friends she did not approve of, and he began drinking to the point of injuring himself, requiring stitches. Defendant's sister also testified briefly in mitigation, noting that defendant's friend Antwon Tyler had defendant sell drugs and bought him alcohol. Prior to this period, defendant went to school, did his work, was quiet, and had no serious problems at home. The defense also submitted documents showing defendant's coursework towards his GED while incarcerated.

¶ 6 The State argued defendant was evil and beyond rehabilitation. The defense pointed to defendant's background and abusive home life, emphasizing multiple times his young age of 16, his lack of prior criminality, and his substance abuse problems. The defense also argued defendant was adversely influenced by Tyler, who was several years older and the codefendant in the defendant's other murder case. See *People v. Gray*, 2013 IL App (1st) 101064. In allocution, defendant apologized that a person was killed but stated the jury and the State's witnesses were mistaken.

¶ 7 Following this, the court rejected the State's assertion that the trial evidence established defendant's crimes were committed with "exceptionally brutal or heinous behavior indicative of wanton cruelty," reasoning that the facts of the case, defendant's age, and lack of criminal history did not warrant such a finding. The court thus declined to impose a natural life sentence.

¶ 8 Instead, in its discretion, the court imposed a 55-year sentence for murder and a concurrent 30-year term for armed robbery for what was the beginning of an apparent "crime wave." The court observed "there's nothing we can do to bring that victim back *** or to restore life once it has been taken away and it's egregious. And that's one of the hardest duties that a

judge has is to distinguish between one murder and another and that is why we have presentence reports. That is why we have the parties give evidence in aggravation and mitigation to assist the Court in arriving at what we hope will be a just determination." The court noted the senseless nature of the crime and defendant's reckless disregard for the victims, including the children in the car. The court noted defendant was "fearless and we don't know what brought him to that point, why he would have acted in that way." Referencing his background, and after expressly having read the PSI, the court noted defendant's problem with alcohol and drugs might have contributed to his actions.

¶ 9    The court continued: "But nevertheless that life was taken and that is something that must be addressed. The manner in which it was done is something that is so serious and so wanting in any kind of caution that might have avoided the horrible circumstances that have resulted that we do feel a very significant sentence is indicated in this case." The court concluded the 55-year sentence reflected what it heard in aggravation and mitigation, then stated:  "And again we do also indicate that we do look carefully at the age of the defendant at the time, the fact that others were involved who were apparently significantly older and that the defendant has no significant criminal history before this event. So that is the sentence that the Court will impose. That is five years below the maximum."

¶ 10    Defendant's conviction was affirmed on direct appeal, and this court rejected his subsequent collateral challenges. See *People v. Gray*, No. 1-95-2932 (1998) (unpublished order under Illinois Supreme Court Rule 23); *People v. Gray*, 1-99-1885 (1999) (unpublished order under Illinois Supreme Court Rule 23); Nos. 1-10-3169 (2012) and 1-12-0032 (2013) (summary orders).

¶ 11    In 2016, defendant filed the present *pro se* motion for leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)), arguing his sentence violated *Miller v. Alabama*, 567 U.S. 460 (2012), which held that mandatory life without parole for juveniles under 18 at the time of their crimes violates the eighth amendment's prohibition against cruel and unusual punishments. He also asserted an equal protection violation, claiming other juveniles were convicted of murder and given lesser sentences than imposed in his case. His petition was dismissed, and on November 20, 2018, this court granted the State Appellate Defender's leave to withdraw as counsel under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). See *People v. Gray,* No. 1-16-2699 (2018) (summary order).

¶ 12    In 2020, the Supreme Court nevertheless issued a supervisory order (No. 124384) directing this court to reconsider defendant's case (No. 1-16-2699) in light of *People v. Buffer*, 2019 IL 122327, ¶ 27, which declared that *Miller* and its progeny apply to defendants who committed offenses as juveniles and were sentenced to life, whether mandatory or discretionary, natural or *de facto*, and whose sentencing court failed to consider their youth and its attendant characteristics when imposing the sentence. See also *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 26. Notably, *Buffer* held that a prison sentence of over 40 years imposed on a juvenile offender constitutes a *de facto* life sentence in violation of the eighth amendment. *Id.* ¶ 41.

¶ 13                                ANALYSIS

¶ 14    The Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1(a) (West 2016); *People v. Davis*, 2014 IL 115595, ¶ 13. The Act contemplates the filing of only one petition without leave of court, and any claim not presented in an original or amended petition is waived. *Davis*, 2014 IL 115595, ¶¶ 13, 14. Leave

of court for initiating a successive postconviction petition is granted only when a defendant shows cause for his failure to bring the claim in his initial postconviction petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2016); *People v. Evans*, 2013 IL 113471, ¶ 10. Both elements must be satisfied. *Carrion*, 2020 IL App (1st) 171001, ¶ 25.

¶ 15    Following the aforementioned supreme court mandate in this case, defendant filed the instant appeal, arguing that his 55-year sentence constitutes a *de facto* life sentence in violation of *Miller* and its progeny. After the parties filed their briefs, the supreme court issued *People v. Dorsey*, 2021 IL 123010, ¶ 64, which held that "a judicially imposed sentence that is more than 40 years but offers day-for-day, good-conduct sentencing credit does not cross the *Buffer* line if it offers the opportunity to demonstrate maturity and obtain release with 40 years or less of incarceration." The court reasoned that a statutory scheme that "allows for the opportunity of release short of a *de facto* life sentence, is at least on par with discretionary parole for a life sentence, which has specifically been held by the Supreme Court to pass muster under the eighth amendment." *Id*. ¶ 54.

¶ 16    Defendant acknowledges that he is eligible for day-for-day credit, making his sentence effectively 27.5 years. See 730 ILCS 5/3-6-3(a)(2) (West 1994). In fact, defendant's projected parole date is September 27, 2022, when he is age 45. This does not qualify as a *de facto* life sentence; *Miller* and its progeny do not apply. See also *People v. Jones*, 2021 IL 126432, ¶ 28 (*Miller*'s additional protections for juvenile offenders apply *only* when a trial court lacks, or refuses to use, discretion in sentencing a juvenile offender to a life, or *de facto* life, sentence); *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 64. Defendant therefore has failed to establish prejudice for his successive petition. See *Dorsey*, 2021 IL 123010, ¶ 32 (noting, prejudice is shown by demonstrating that the claim not raised during the initial proceeding so infected the

trial that the resulting conviction or sentence violated due process); *Ruddock*, 2022 IL App (1st) 173023, ¶ 66. Indeed, "[l]eave of court to file a successive petition should be denied when it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings." *Id.* ¶ 33.

¶ 17    Defendant nonetheless argues his sentence violates our state proportionate penalties clause. We note defendant failed to raise this specific issue in his petition. See 725 ILCS 5/122-3 (West 2016) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"); *People v. Jones*, 213 Ill. 2d 498, 505 (2004) (noting, a claim not raised in the postconviction petition itself cannot be raised on appeal). Regardless, *Dorsey* made clear that *Miller* and its progeny do not provide petitioners seeking leave to file successive petitions with the requisite cause for challenging their sentences on proportionate penalties grounds. *Dorsey*, 2021 IL 123010, ¶ 32, 74 (*Miller*'s unavailability merely deprived the defendant of "some helpful support" for his state proportionate penalties claim, which is insufficient cause); see also *People v. Peacock*, 2022 IL App (1st) 170308-B, ¶ 20, and cases cited therein; *but see People v. Meneses*, 2022 IL App (1st) 191247-B, ¶ 22 (reversing the denial of the juvenile defendant's successive postconviction petition on proportionate penalties grounds).

¶ 18    Even that aside, and assuming *Miller*-type reasoning applied, the trial court considered the relevant factors, including the mitigating qualities of defendant's youth, its attendant characteristics, his background, and the parties' arguments, before declining an extended term and instead imposing a discretionary sentence that was wholly proportionate with the senseless offense for which defendant was found guilty. See *People v. Lusby*, 2020 IL 124046, ¶¶ 33-35, 52; 730 ILCS 5/5-8-1(a)(1) (West 1994) (murder carries 20 to 60 years); see also *Ruddock*, 2022

IL App (1st) 173023, ¶ 71 (the juvenile defendant's 55-year sentence for murder and attempted murder was not disproportionate to the offense committed, nor did it shock the moral sense of the community); *cf. Jones v. Mississippi*, 141 S. Ct. 1307, 1313, 1317-18 (2021) (a separate factual finding of permanent incorrigibility is not required before a court imposes a life-without-parole sentence on a murderer under 18). The same trial judge presided over this case from beginning to end before reaching what it believed was a just sentence.[2] Therefore, defendant also has failed to show prejudice with respect to his proportionate penalties claim in his successive petition. See *Lusby*, 2020 IL 124046, ¶ 52.

¶ 19                                     CONCLUSION

¶ 20    Defendant has failed to establish the requisite cause and prejudice for leave to file his postconviction petition. *Peacock*, 2022 IL App (1st) 170308-B, ¶ 22. We therefore affirm the circuit court's judgment denying defendant leave to file the petition.

¶ 21    Affirmed.

---

[2]We note that defendant filed a pretrial motion to suppress, where his juvenile status was discussed at length.