NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220841-U

NO. 4-22-0841

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| CHAD CALLAHAN, | ) | No. 18CF46 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice DeArmond and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1  *Held*:  (1) The trial court did not erroneously prohibit defendant from proceeding *pro se* on his motion to withdraw his guilty plea.

(2) The trial court did not err in failing to conduct a preliminary *Krankel* inquiry.

¶ 2  Defendant, Chad Callahan, appeals from the trial court's judgment denying his motion to withdraw his guilty plea. On appeal, defendant argues the court erred in (1) preventing him from proceeding *pro se* on his motion to withdraw his guilty plea and (2) failing to conduct a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into his allegations of ineffective assistance of counsel. We affirm.

¶ 3  I. BACKGROUND

¶ 4        In February 2018, the State charged defendant with unlawful distribution of a look-alike substance (720 ILCS 570/404(b) (West 2016)) (count I), unlawful delivery of cocaine (*id.* § 401(d)(i)) (count II), unlawful delivery of clonazepam (*id.* § 401(g)) (count III), unlawful delivery of diazepam (*id.*) (count IV), and unlawful delivery of diazepam within 1000 feet of a church (*id.* § 407(b)(5)) (count V). The trial court entered an order appointing the public defender's office, and attorney William Bertram was subsequently assigned to represent defendant.

¶ 5        On February 26, 2019, defendant pleaded guilty to counts I and II in exchange for the State's agreement to dismiss the remaining counts. On April 16, 2019, the trial court sentenced defendant to concurrent five-year terms of imprisonment.

¶ 6        On May 8, 2019, defendant, through counsel, filed a motion to reconsider his sentence. Counsel attached an Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) certificate to the motion stating, in relevant part, he had "made any amendments to the motion necessary for the adequate presentation of any defects in [the guilty plea and sentencing] proceedings." On May 16, 2019, defendant *pro se* filed a motion to withdraw his guilty plea. Defendant alleged his plea of guilty was not knowing "due to [his] mental status." Defendant explained he was unable to consistently take his psychiatric medications and had "plenty of medical records *** to back this up." He further alleged he had been "led to believe things that were absolutely not true by [his] public defender."

¶ 7        At a subsequent hearing, the trial court conducted a *Krankel* inquiry into the allegations in defendant's *pro se* motion. Defendant explained to the court that counsel had informed him that the State had "complete evidence" of his guilt. Yet, when defendant went to counsel's office after pleading guilty, he discovered that, in reality, there was no evidence of his

guilt. In response, counsel stated he had made discovery available to defendant prior to his plea, but defendant "did not avail himself to that." He further explained that based on his assessment of the State's evidence, it was unlikely defendant would have been acquitted of the charges against him at a trial. The court found it unnecessary to appoint new counsel and continued the matter for the filing of an amended motion to withdraw the guilty plea.

¶ 8 On February 27, 2020, defendant, through counsel, filed an amended motion to withdraw his guilty plea. Defendant alleged his plea was not knowing and voluntary because he "was suffering from the effects of a prescription drug overdose in February of 2018" and "did not receive consistent mental health treatment for his various mental health and physical health problems while out on bail." In support, defendant attached an affidavit in which he averred he was given the incorrect medications while in pretrial custody and was unable to obtain consistent medication while out on bail. Counsel did not attach a Rule 604(d) certificate or any other documentation to the amended motion. Following a hearing, the trial court denied defendant's motions, and defendant appealed.

¶ 9 On appeal, defendant argued counsel failed to strictly comply with Rule 604(d) by filing a certificate of compliance prior to filing an amended motion to withdraw his guilty plea. *People v. Callahan*, 2021 IL App (4th) 200334-U, ¶ 11. We agreed with defendant, vacated the trial court's judgment, and remanded for further proceedings in strict compliance with Rule 604(d). *Id.* ¶ 24.

¶ 10 At the initial hearing on remand, defendant informed the trial court that he wanted the public defender's office to represent him on his motion to withdraw his guilty plea. When defendant told the court Bertram had represented him on his initial postsentencing motions, the court stated, "I don't think I can give it to Mr. Bertram. It's a 604(d) technical issue. So I don't

know that Mr. Bertram, I don't believe that Mr. Bertram should handle it." The court informed defendant he would likely be assigned the chief public defender. However, the next day, the public defender's office provided notice that Bertram had been reassigned to represent defendant on remand.

¶ 11 At a subsequent hearing, on April 12, 2022, Bertram informed the trial court that defendant "does not want to cooperate with me, [and] does not want *** me prosecuting the motion to vacate his guilty plea." Defendant and the court then engaged in the following exchange:

"THE COURT: Okay. Well, is there a reason why you can't talk to Mr. Bertram right now?

DEFENDANT: Because of, my reason is because he did not represent me right. He was involved in—It don't matter now. He's the reason why I went to prison, why I did the jury, everything. He's the reason why I won this appeal.

***

You even state on the record that he could not do this because of him. I don't want him handling this appeal.

THE COURT: Okay. The appeal of the underlying issues in the case is still pending. This was sent back because of a technical rule and some language that was in the certificate that needs to be filed. So you are actually getting a second attempt to withdraw your plea I believe. I mean—

* * *

Okay. So this is—So, sir, my question for you is this. At this point in time with regards to the 2018 case, are you still wishing to appeal that case?

- 4 -

DEFENDANT: Yeah. And I was told by the Appellate Court that I would be able to attach the record that he did not attach. This is why they granted it because of the records he did not attach.

THE COURT: So I don't know who told you what; but if you wish to pursue this, then I have to appoint an attorney for you. Mr. Bertram is the attorney. I don't have any evidence to date that suggests that he provided ineffective assistance of counsel. So I am not going to appoint another attorney to handle at this point the post-trial motions.

What's happening is you are re-arguing here at this Court the motion to withdraw your plea of guilty. He has to go through and make sure that he has presented all of the arguments; and then based upon that, I will determine whether or not to allow you to withdraw your plea of guilty in which case we start the case over; or if I deny you the right to withdraw your plea, then the whole thing goes back up on appeal to deal with the issues in the appeal. We're not dealing with any of the issues on the appeal right now.

DEFENDANT: So okay. What if I choose, is there any way I can do it [*pro se*] and do it myself? Or can he go ahead and do like you say you have to have right now to get the appeal on file, and then I can go after that point?

THE COURT: Right. You should have an attorney to represent you at this point. He can do what he needs to, but you have to cooperate with him for him to do that. And then what happens is you get your hearing on the motion to withdraw your plea of guilty; and if I deny it, then you go back up on appeal and they actually deal with your arguments in the first place. If I grant it, then we start

over; and you've got the relief you requested. But they have sent it back on a technicality.

Do you understand that?

DEFENDANT: Yeah.

THE COURT: Okay. So we're not dealing with your main argument on appeal.

DEFENDANT: Yeah. I want to have it refiled.

THE COURT: Will you cooperate with Mr. Bertram?

DEFENDANT: I mean, I have no choice.

THE COURT: All right. Okay."

¶ 12 On April 22, 2022, defendant filed a second amended motion to withdraw his guilty plea. Following a hearing, the trial court denied defendant's motion.

¶ 13 This appeal followed.

¶ 14 II. ANALYSIS

¶ 15 On appeal, defendant argues the trial court erred in (1) preventing him from exercising his right under Rule 604(d) to proceed *pro se* on his motion to withdraw his guilty plea and (2) failing to conduct a preliminary *Krankel* inquiry into his allegations of ineffective assistance of counsel.

¶ 16 A. Rule 604(d)

¶ 17 First, defendant argues the trial court erred in preventing him from proceeding *pro se* on his motion to withdraw his guilty plea. According to defendant, Rule 604(d) provides criminal defendants with the right to proceed *pro se* during postsentencing proceedings, and the court committed reversible error in depriving him of that right by informing him that he had no

choice but to proceed with appointed counsel. Alternatively, defendant argues that even if Rule

604(d) "does not expressly guarantee [him] the right to proceed *pro se* without counsel, the [trial]

court still abused its discretion in failing to realize that it could consider [his] request to appear

*pro se* when that request was timely and knowingly made." "We review a trial court's

compliance with supreme court rules *de novo*." *People v. Smith*, 365 Ill. App. 3d 356, 358

(2006).

¶ 18        As an initial matter, we note that the State argues, in part, defendant has forfeited

his argument by failing to make a contemporaneous objection and raise the issue in a written

postjudgment motion, such as a "motion to reconsider the denial of [his] motion to withdraw his

guilty plea." We disagree. The State cites no authority supporting its position that a defendant

must file a motion to reconsider the denial of a motion to withdraw a guilty plea in order to

properly preserve an issue for review. The State has therefore forfeited its own forfeiture

argument. See Ill. S. Ct. R. 341(h)(7), (i) (eff. Oct. 1, 2020). Moreover, as noted by defendant,

the State's suggested approach is at odds with  Rule 604(d) and Illinois Supreme Court Rule

606(b) (eff. Mar. 12, 2021). Rule 604(d) provides that no appeal can be taken from a judgment

entered upon a guilty plea unless a defendant files a motion to reconsider the sentence or a

motion to withdraw the guilty plea. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Rule 606(b) provides

that a defendant must file a notice of appeal within 30 days of the entry of the order disposing of

the Rule 604(d) motion. Ill. S. Ct. R. 606(b) (eff. Mar. 12, 2021). A motion to reconsider the

denial of a Rule 604(d) postjudgment motion would not toll the time to file a notice of appeal. *Id.*

It is doubtful our supreme court contemplated that, to preserve an issue for appeal under these

circumstances, a defendant would have to file a "post-postjudgment" motion, and have it ruled

on, all within 30 days of the denial of the postjudgment motion. Thus, we reject the State's forfeiture argument, and we will address defendant's claim.

¶ 19 Rule 604(d) governs the procedure a criminal defendant must follow if he wishes to appeal from a judgment entered upon a plea of guilty. *In re H.L.*, 2015 IL 118529, ¶ 7. It provides that a defendant wishing to appeal his conviction or sentence must file, respectively, a motion to withdraw the guilty plea or to reconsider the sentence within 30 days of the imposition of the sentence. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). The motion is to be promptly presented to the trial court, at which point the "trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel." *Id.* Rule 604(d) must be read together with Illinois Supreme Court Rule 605(b) (eff. Oct. 1, 2001). *People v. Smith*, 365 Ill. App. 3d 356, 359-60. Rule 605(b) provides that at the time of imposing the sentence, the trial court must admonish the defendant that if he is indigent, "counsel will be appointed to assist the defendant with the preparation of the motions." Ill. S. Ct. R. 605(b) (eff. Oct. 1, 2001). "[W]hen read together, Rules 604(d) and 605(b) require a trial court to appoint counsel to an indigent defendant in postplea proceedings unless the trial court finds that defendant knowingly and intelligently waives the right to counsel." *Smith*, 365 Ill. App. 3d at 360.

¶ 20 Defendant acknowledges his position is inconsistent with this court's decision in *People v. Hanna*, 155 Ill. App. 3d 805, 813 (1987). In *Hanna*, we concluded that "[a]lthough Supreme Court Rule 604(d) [citation] provides for counsel to be provided for indigents when they seek to withdraw a guilty plea, it does not accord any right to proceed *pro se*." We further noted that "[w]hether a defendant is permitted to represent himself at a hearing under Rule 604(d) is a matter within the trial court's discretion." *Id.* at 813-14. However, defendant goes on

to suggest his position is supported by the First District's decision in *People v. Gray*, 2013 IL App (1st) 101064. In *Gray*, the appellate court concluded that criminal defendants have a right to proceed *pro se* under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)), which contains language nearly identical to that found in Rule 604(d). *Gray*, 2013 IL App (1st) 101064, ¶ 22. Specifically, section 122-4 of the Act provides:

> "If the petitioner is without counsel and alleges that he is without means to procure counsel, he shall state whether or not he wishes counsel to be appointed to represent him. If appointment of counsel is so requested, and the petition is not dismissed ***, the court shall appoint counsel if satisfied that the petitioner has no means to procure counsel." 725 ILCS 5/122-4 (West 2020).

The *Gray* court found that although the Act "does not expressly contemplate a defendant making a request for counsel and later revoking it ***, it clearly does not contemplate compelling a defendant who does not want counsel to accept counsel nonetheless." *Gray*, 2013 IL App (1st) 101064, ¶ 22. The *Gray* court further reasoned as follows:

> "The Act creates a statutory right to counsel [citation] that the statutory language expressly leaves to the defendant-petitioner to invoke at his choosing. We shall not hold that a defendant can choose to proceed *pro se* when he files his postconviction petition but, having chosen at that time to request counsel, is irrevocably bound by that decision throughout the proceedings on his petition. In sum, we find a right to proceed *pro se* under the Act." *Id.*

¶ 21        Here, we find it unnecessary to address whether criminal defendants have a right to proceed *pro se* under Rule 604(d) because, even assuming, *arguendo*, defendant is correct that

Rule 604(d) guarantees criminal defendants the right to self-representation, he has failed to show that the trial court erroneously deprived him of such a right in this case.

¶ 22 Defendant points to the following exchange he had with the trial court as evidence the court deprived him of his alleged Rule 604(d) right to self-representation:

"THE COURT: [I]f you wish to pursue this, then I have to appoint an attorney for you. Mr. Bertram is the attorney. I don't have any evidence to date that suggests that he provided ineffective assistance of counsel. So I am not going to appoint another attorney to handle at this point the post-trial motions.

\*\*\*

DEFENDANT: So okay. What if I choose, is there any way I can do it [*pro se*] and do it myself? Or can he go ahead and do like you say you have to have right now to get the appeal on file, and then I can go after that point?

THE COURT: Right. You should have an attorney to represent you at this point. He can do what he needs to, but you have to cooperate with him for him to do that. And then what happens is you get your hearing on the motion to withdraw your plea of guilty; and if I deny it, then you go back up on appeal and they actually deal with your arguments in the first place. If I grant it, then we start over; and you've got the relief you requested. But they have sent it back on a technicality.

Do you understand that?

DEFENDANT: Yeah.

\* \* \*

THE COURT: Will you cooperate with Mr. Bertram?

DEFENDANT: I mean, I have no choice."

According to defendant, this exchange demonstrates that the trial court erroneously admonished him that "only a defendant with counsel can challenge his or her conviction and sentence following a guilty plea."

¶ 23        We are not convinced the trial court informed defendant in the above exchange that he could not represent himself on his motion to withdraw his guilty plea. Instead, the court informed defendant that because he had previously elected to proceed with appointed counsel, and Bertram had been assigned to his case, his only option was to proceed with Bertram as opposed to a different attorney. Importantly, it is not at all clear that defendant actually wanted to proceed without counsel. In fact, it appears he desired representation. At the initial status hearing on remand, the court asked defendant if he wished to have counsel appointed. Defendant indicated he did. While defendant suggests he was indicating to the court that he did not want to proceed with appointed counsel and was actually requesting to proceed *pro se*, the record demonstrates otherwise. The record shows defendant's complaint was not that he did not want to be represented by counsel at all—as noted, he explicitly expressed his desire to have counsel appointed. Rather, defendant's complaint revolved around the fact that Bertram, specifically, had been assigned to represent him. Defendant believed Bertram was "the reason why [he] went to prison" and informed the court that he did not want Bertram "handling this appeal." Defendant never stated he did not want *any* attorney representing him. He just did not want Bertram representing him. However, the public defender's office assigned Bertram to defendant's case, and the trial court correctly noted that because he desired counsel, it was required to appoint him counsel. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017) ("[I]f the defendant is indigent and desires counsel, the trial court shall appoint counsel."). In short, the trial court did not deprive defendant

of what he claims was his Rule 604(d) right to proceed *pro se*; it denied his request to have counsel other than Bertram appointed.

¶ 24        We also reject defendant's alternative argument that the trial court "erred in refusing to even consider [his] attempts to proceed *pro se*." Again, even assuming, *arguendo*, criminal defendants have a right of self-representation under Rule 604(d), defendant did not properly invoke that right under the circumstances.

¶ 25        To invoke the right of self-representation, a defendant "must knowingly and intelligently relinquish the right to counsel, and the waiver of counsel must be clear and unequivocal, not ambiguous." *People v. Ashoor Rasho*, 398 Ill. App. 3d 1035, 1041 (2010). "A defendant does not exercise his right of self-representation unless he articulately and unmistakably demands to proceed *pro se*." (Internal quotation marks omitted.) *Id.* "Courts must indulge in every reasonable presumption against waiver of the right to counsel." (Internal quotation marks omitted.) *People v. Burton*, 184 Ill. 2d 1, 23 (1998).

¶ 26        Here, after the trial court informed defendant that it would not appoint him a new attorney, defendant stated the following: "What if I choose, is there any way I can do it [*pro se*] and do it myself? Or can he go ahead and do like you say you have to have right now to get the appeal on file, and then I can go after that point?" The court responded, "Right. You should have an attorney to represent you at this point. He can do what he needs to, but you have to cooperate with him for him to do that." After this exchange, defendant did not make any additional references to proceeding *pro se*. We cannot say the above exchange amounts to an articulate and unmistakable demand to proceed *pro se*. See *Ashoor Rasho*, 398 Ill. App. 3d at 1041. Defendant asked the court whether proceeding *pro se* was an option. Moreover, before the court could even answer defendant's first question, he moved on to a second question and never again asked about

- 12 -

his ability to represent himself. Thus, even if we were to assume defendant has a right to self-representation under Rule 604(d), he failed to "articulately and unmistakably" invoke that right, and we reject his argument. *Id.*

¶ 27                                        B. *Krankel*

¶ 28        Next, defendant argues the trial court erred in failing to conduct a *Krankel* inquiry when he informed the court that counsel "did not represent [him] right" and "was the reason he went to prison." The State disagrees, arguing the court had no duty to conduct a *Krankel* inquiry because "the record shows defendant's second allegation against Bertram was merely comprised of complaints about Bertram's initial representation of defendant that resulted in his convictions and sentence." We review *de novo* the legal question of whether the trial court erred in failing to conduct a *Krankel* inquiry. *People v. Moore*, 207 Ill. 2d 68, 75 (2003).

¶ 29        The common law procedure developed from the supreme court's decision in *Krankel* "is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29. Under *Krankel* and its progeny, new counsel is not automatically appointed when a defendant raises an ineffective-assistance claim. *Id.* Instead:

> "when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Moore*, 207 Ill. 2d at 77-78.

"Even where the court has already conducted an inquiry into claims of ineffective assistance, it must conduct a preliminary *Krankel* inquiry into further claims raised afterward." *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 19.

¶ 30 Here, at a hearing on remand shortly after being reassigned to represent defendant on his postsentencing motion, Bertram informed the trial court that defendant "does not want to cooperate with me, [and] does not want *** me prosecuting the motion to vacate his guilty plea." The court asked defendant why he refused to communicate with Bertram, and defendant answered as follows:

> "DEFENDANT: Because of, my reason is because he did not represent me right. He was involved in—It don't matter now. He's the reason why I went to prison, why I did the jury, everything. He's the reason why I won this appeal."

According to defendant, the above allegations triggered the trial court's duty under *Krankel* to conduct an inquiry into the underlying factual basis of his ineffective-assistance claim.

¶ 31 We agree with the State that the trial court was under no obligation to conduct a *Krankel* inquiry under the circumstances because the allegations defendant highlights were the same allegations into which the court had previously inquired, as opposed to "further claims raised afterward." *Roberson*, 2021 IL App (3d) 190212, ¶ 19. In his initial *pro se* motion to withdraw his guilty plea, defendant alleged, in part, he had been "led to believe things that were absolutely not true by [his] public defender." Based on this allegation, the court then conducted a *Krankel* inquiry. Defendant explained to the court that he only pleaded guilty because counsel had informed him that the State had "complete evidence" of his guilt. Yet, when defendant went to counsel's office after pleading guilty, he discovered that, in reality, there was no evidence of his guilt. In response, counsel stated he had made discovery available to defendant prior to his

plea, but defendant "did not avail himself to that." He further explained that based on his assessment of the State's evidence, it was unlikely defendant would have been acquitted of the charges against him at a trial. The court found it unnecessary to appoint new counsel.

¶ 32    On remand, when asked why he refused to communicate with Bertram, defendant responded, "[M]y reason is because he did not represent me right. He was involved in—It don't matter now. He's the reason why I went to prison, why I did the jury, everything. He's the reason why I won this appeal." This claim of ineffective assistance is the precise claim into which the trial court had previously conducted a *Krankel* inquiry. Tellingly, defendant even stated that his complaint with Bertram "don't matter now." Defendant did not raise any allegation that Bertram had provided ineffective assistance on remand. Instead, by saying Bertram was the reason he went to prison and the reason he waived his right to a jury trial, defendant was merely rehashing his previous complaint that Bertram had erroneously informed him that the State had compelling evidence of his guilt. Because the court had previously conducted a *Krankel* inquiry into these allegations and defendant did not raise any new allegations of ineffective assistance, the court was under no obligation to inquire into the same allegations for a second time. *Id.* Accordingly, we reject defendant's argument.

¶ 33                              III. CONCLUSION

¶ 34    For the reasons stated, we affirm the trial court's judgment.

¶ 35    Affirmed.